UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SILVA TRUCKING, INC. et al.<br><br>Defendants. | No.  2:14-CV-0015 KJM CKD<br><br><br><br>ORDER |

On April 25, 2014, the court heard argument on a motion to dismiss filed by defendants William and Debra Hackett (the Hacketts), Silva Trucking, Inc. (Silva) and Elaine McDonald (McDonald) (collectively defendants). It also heard argument on a motion to intervene filed by Carolina Casualty Insurance Company (CCIC). Eric Emanuel appeared for plaintiff Lexington Insurance Company (Lexington); Robert Buccola and Steven Campora appeared for the Hacketts and made a special appearance for Brian Panish on behalf of Silva and McDonald; Galina Jakobson appeared for proposed intervenor CCIC. After considering the parties' arguments, the court GRANTS the motion to dismiss and DENIES the motion to intervene as moot.

////

////

////

1

I.  BACKGROUND[1]

In 2010, Lexington issued a commercial automobile insurance policy to Silva on a "follow-form" excess basis with an indemnity limit of $4 million for all claims arising from one accident, in excess of the $1 million per accident limit under the primary policy issued by CCIC.[2] Complaint, ECF No. 1 ¶ 11.

On October 11, 2010, while driving for Silva, McDonold was involved in an accident, causing injuries to Benjamin Curry and Debra Hackett. *Id.* ¶¶ 11-12.  At the time of the accident, Debra Hackett was acting in the course of her employment with Storer Transportation, which has a workers' compensation policy with National Interstate. *Id.* ¶ 15.

Primary insurer CCIC retained Cholakian & Associates as counsel for Silva and McDonold. *Id.* ¶ 16; *see* Hacketts' Mot. to Dismiss, Ex. B, ECF No. 8-2 at 11.  Kevin Cholakian and Jennifer Kung of Cholakian and Associates handled the negotiations and ultimate defense against the Hacketts' claim.

On December 16, 2011, the Hacketts' lawyer Elliott Reiner wrote to Cholakian and requested "preliminary acceptance" of their settlement demand for the combined $5 million policy limits of the primary and excess policies. ECF No. 1 ¶ 17.  This proposal was conditioned on the Hacketts' confirming there was no insurance above $5 million and structuring of the settlement by plaintiffs' representative. *Id.*  The letter did not mention any potential claim by

---

[1] The facts in this section are drawn from the complaint and from the additional documents the parties have submitted in support of or in opposition to the motions to dismiss. The defendants claim the motions are brought under Rule 12(b)(1) and so provide the documents as part of their factual attack on jurisdiction. As discussed below, however, the motion is not a challenge to subject matter jurisdiction. However, in cases requesting a dismissal or stay because of a pending state action, courts routinely rely on materials outside the record. Although there are some objections to portions of declarations submitted with the motions, which the court resolves below, the parties do not object to the documents submitted in support of and opposition to the motion, so the court considers them in resolving the pending motions.

[2] "There are two levels of insurance coverage—primary and excess. Primary insurance is coverage under which liability attach[es] to the loss immediately upon the happening of the occurrence. Liability under an excess policy attaches only after all primary coverage has been exhausted." *Cmty. Redev. Agency of L.A. v. Aetna Cas. & Surety Co.*, 50 Cal. App. 4th 329, 337-38 (1996) (internal quotation marks and citation omitted). A follow-form policy "has the same scope of coverage as the primary policy." *Coca-Cola Bottling Co. of San Diego v. Columbia Cas. Ins. Co.*, 11 Cal. App. 4th 1176, 1183 (1993) (emphasis and internal citation omitted).

2

1  Curry, liens or property damage claims. *Id*. Subsequently Curry's lawyer indicated that Curry's
2  claim would be included with the Hacketts' claim; still later, the workers' compensation carrier
3  for Curry's employer demanded direct payment. *Id*.

4  On January 17, 2012, the date set for accepting the settlement demand, Cholakian
5  and Ralph Zappala of Lewis Brisbois Bisgaard & Smith LLP, counsel for Lexington, wrote to the
6  Hacketts' counsel, indicating acceptance of the offer while seeking clarification of the identity of
7  all the claimants to the policy proceeds. *Id.* ¶ 18; ECF No. 9-1 at 53-55.

8  On January 18, 2012, Reiner wrote, acknowledging the policy-limits settlement
9  offer, but saying he needed additional information before he could resolve the case; he asked for
10 assets and insurance declarations from Silva and a declaration from Silva's insurance broker. *Id*.
11 ¶ 19. He said he also needed to obtain an allocation agreement with the workers' compensation
12 insurer and resolve a subrogation claim for damage to Curry's vehicle. *Id.* ¶¶ 19-20.

13 Silva's lawyer failed to provide the information about assets and insurance to the
14 Hacketts' lawyer and on March 21, 2012, the Hacketts' counsel wrote, saying the policy limits
15 settlement was no longer acceptable. *Id*. ¶ 22. Thereafter Silva's lawyer provided the financial
16 and insurance information. *Id*.

17 On April 20, 2012, Lexington filed a complaint in interpleader in Sacramento
18 County Superior Court, case number 34-2012000122876, tendering its $4 million policy limit
19 into court. *Id.*

20 On May 17, 2012, Curry filed suit in Sacramento County Superior Court, case
21 number 34-2012-00124592, against Silva, McDonald and Debra Hackett. *Id*. ¶ 25. This case was
22 later consolidated with case number 34-2012-00128931 filed on July 27, 2012 by Dreyer Babich
23 Buccola Wood Campora, LLP as well as Reiner on behalf of the Hacketts against Silva and
24 McDonald (the Underlying Action), with William Hackett claiming loss of consortium and Debra
25 Hackett seeking recovery for bodily injury. *Id*. ¶ 27. National Interstate filed a complaint in
26 intervention in these actions, seeking $1,137,347 in workers' compensation benefits paid to Debra
27 Hackett. *Id*. 27.
28 /////

On July 12, 2013, Cholakian wrote to Buccola, noting the issues to be resolved before the combined policy limit funds could be released to settle the Hacketts' claims. ECF Nos. 8-2 at 11-13 & 9-1 at 14-16.

Traveler's Insurance Company filed a workers' compensation lien on Curry's claim and in October 2013, CCIC and Lexington released $500,000 from the interpleaded funds to settle Curry's and Traveler's claims. ECF No. 1 ¶ 29.

On December 6, 2013, a jury returned a verdict in the Underlying Action against Silva and McDonald in favor of the Hacketts for $34.9 million. Judgment in that amount was entered. *Id*. 30.

On December 13, 2013, William Gorham, new counsel for Silva and McDonald wrote to Karen Uno of Meckler Bulger Tilson Marick & Pearson, lawyers for CCIC, and Lane Ashley of Lewis Brisbois Bisgaard & Smith, lawyers for Lexington, "to demand that Lexington and CCIC satisfy the verdict in order to protect their insureds . . ." by January 3, 2014. Pl.'s Opp'n, Ex. A, ECF No. 21-1 at 4-15. Gorham sent another letter on December 19, 2013, asking Lexington and CCIC to provide information in anticipation of his engaging in mediation with the Hacketts' lawyer "to explore avenues available to protect them against what appears to be an impending judgment." ECF No. 21-1 at 17-19.

On December 30, 2013, Ashley responded to Gorham on behalf of Lexington, taking issue with Gorham's characterization of the record, and noting that he would not engage in further debate "through the mail as it appears that [these issues] will only be resolved through future litigation." *Id*. at 21-27. A second letter dated December 31, 2013, followed. *Id*. at 29-30.

On January 2, 2014, Lexington filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, against the Hacketts, Silva and McDonald. ECF No. 1. Lexington seeks a judgment declaring that its policy limits applicable to any judgment in the Underlying Action are $4 million, it owes no contractual or other duty to pay more than that amount to indemnify Silva and McDonald and that it discharged its contractual duties and its duty of good faith and fair dealing in response to settlement opportunities in the Underlying Action. *Id*. at 9.

/////

1         On January 6, 2014, Gorham wrote to Uno and Ashley, again asking CCIC and Lexington to pay the judgment against Silva and McDonold or, in the alternative, to pay for counsel for Silva and McDonold. ECF No. 21-1 at 32-33. On January 7, 2014, Ashley responded on Lexington's behalf, saying that it included Silva and McDonold as defendants in the declaratory judgment action because of Gorham's claim that Lexington had not acted in good faith. *Id.* at 35-36. It declined to "pay to sue itself."

        On January 8, 2014, Brian Panish, new counsel for Silva and McDonold, wrote to Ashley, noting he had been retained to prosecute a bad faith action against Lexington. *Id.* at 38. He also said he would be filing a cross-claim/counter-claim in the declaratory judgment action against counsel. *Id.*

        On January 28, 2014, Panish, on behalf of Silva and McDonold, filed suit in Sacramento County Superior Court, Case No. 34-2014-00157903, against Lexington, CCIC, Cholakian & Associates, Kevin Cholakian and Jennifer Kung from that firm; and Lewis, Brisbois, Bisgaard & Smith, LLP and Ralph Zappala from that firm, alleging three causes of action: (1) breach of the implied duty of good faith and fair dealing against CCIC and Lexington; (2) breach of contract against CCIC and Lexington; (3) professional negligence against Cholakian and Associates and Lewis, Brisbois, Bisgaard & Smith and the individual lawyers. ECF Nos. 8-2 at 15-28 & 9-1 at 20-42.

        On March 20, 2014, CCIC removed *McDonold v. Lexington Insurance Company* to this court, claiming the court had supplemental jurisdiction over the action because of the pendency of the instant case. See Civ. No. S-14-733 TLN KJN (McDonold docket), ECF No. 2 at 4-5. On April 2, 2012, the district judge assigned to the removed action accepted the parties' stipulation and remanded the *McDonold* action to the Superior Court. McDonold Docket, ECF No. 12.

        Lexington has demurred to the Superior Court case, citing the pendency of the instant action. ECF No. 23-1 at 4-17.

/////

/////

5

## II. THE MOTIONS TO DISMISS

The Hacketts, Silva and McDonold have filed motions to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, presenting almost identical arguments that the court should decline to exercise jurisdiction under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942). They also claim their motions are based on Rule 12(b)(7), but as they provide no argument in support of this reference, the point is waived. *See John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (stating that an undeveloped argument is waived); *Navellier v. Sletten*, 262 F.3d 923, 948–49 (9th Cir. 2001) (stating that an issue not supported by argument or citations to authorities and supporting documents in the record is waived). Silva and McDonold also cite Rule 12(b)(6), but without any elaboration; any reliance on that rule also is waived.

As explained more fully below, *Brillhart* is concerned with a court's discretionary jurisdiction rather than subject matter jurisdiction. Nevertheless, some courts consider a motion to dismiss or stay under *Brillhart* as one brought under Rule 12(b)(1). *See, e.g., Exit 282A Development Co., LLC v. Worrix*, No. 3:12–CV–939–BR, 2013 WL 786443, at *2 (D. Or. Mar. 1, 2013); *Cincinnati Ins. Co. v. Silvestri Paving Co.*, No. 10 C 07971, 2011 WL 4686437 at *2 (N.D. Ill. Oct. 4, 2011). This court will not rely on Rule 12(b)(1), but rather will consider whether to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, on which Lexington relies. *Wilton v. Seven Falls Company*, 515 U.S. 277, 289-90 (1995) (recognizing that a district court's decision about the propriety of hearing declaratory judgment actions is to be reviewed for an abuse of discretion); *Monavie v. Quixtar, Inc.*, 741 F. Supp. 2d 1227, 1232 n.2 (D. Utah 2009) (stating that *Brillhart* abstention does "not raise Rule 12(b)(1) jurisdictional defects").

### A. Evidentiary Considerations

The defendants attach a number of exhibits to their respective motions and provide declarations of counsel identifying the exhibits and describing the progress not only of the Underlying Action but also of the parties' dealings before the judgment was entered in that case.
/////

6

1   Hacketts' Mot. to Dismiss, ECF No. 8, Decl. of Steven Campora, ECF No. 8-2; Silva &
2   McDonald's Mot. to Dismiss, ECF No. 9, Decl. of Steven Campora, ECF No. 9-1.
3           Lexington does not object to any of the defendants' exhibits, but does object to
4   paragraphs 7 and 11 and portions of paragraph 13 of Campora's declaration.  ECF No. 21-2 at 2.
5           In paragraph 7 Campora avers that after March 2012, all the attorneys involved in
6   the Underlying Action knew Lexington and CCIC "would be sued for bad faith" if the judgment
7   in the Underlying Action exceeded the combined policy limits.  ECF No. 8-1.  Lexington objects
8   that the statement is not based on personal knowledge but rather only speculation as to what the
9   other lawyers knew.  ECF Nos. 8-2 ¶ 7 & 9-1 ¶ 7.  This objection is well-taken.  FED. R. EVID.
10  602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a
11  finding that the witness has personal knowledge of the matter.").
12          In paragraph 11, Campora discusses the suit filed in state court, opining that "[i]t
13  would be uneconomical as well as vexatious for a federal court to proceed in a declaratory
14  judgment suit, in this matter, because if Silva Trucking, Inc. and Elaine McDonald prevail in this
15  pending declaratory relief action, their claims for monetary damages will not be addressed.  The
16  State Court action will still have to proceed and that would result in piecemeal litigation and,
17  perhaps, inconsistent judgments."  *Id.* ¶ 11.  This objection too is sustained.  FED. R. EVID. 701;
18  *see Lee v. City of Madera*, CIVF04-5607 AWI DLB, 2008 WL 5042856, at *4 (E.D. Cal. Nov.
19  21, 2008) (stating that "a lay witness cannot offer testimony to establish a legal conclusion").
20          Finally, Lexington objects to Campora's claim that "Lexington . . . filed this
21  pending action at a time when it was well aware that a State Court action, involving identical
22  issues raised in this case, as well as others, specifically including damages, would be filed in State
23  Court."  ECF Nos. 8-2 ¶ 13 & 9-1 ¶ 13.  This objection is sustained.  FED. R. EVID. 602.
24          The Hacketts ask the court to take judicial notice of documents from *McDonald v.*
25  *Lexington Insurance Company*, Sacramento County Superior Court No. 34-2014-00157903, and
26  from *McDonald v. Lexington Insurance Company*, Civ. No. S-14-733 TLN KJN.  This request is
27  granted.  *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (quoting *United States*
28  *ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992))

1  (stating that a court may take judicial notice "'of proceedings in other courts, both within and
2  without the federal judicial system, if those proceedings have a direct relation to the matters at
3  issue'").

4    B.  Analysis

5  Under 28 U.S.C. § 2201, a court may "declare the rights and other legal relations"
6  of the parties to an actual controversy.  It is "'an enabling act, which confers discretion on the
7  courts rather than an absolute right on a litigant.'" *Wilton*, 515 U.S. at 287 (quoting *Public Serv.*
8  *Comm'n of Utah v. Wycoff Co*. 344 U.S. 237, 241 (1952)); *Leadsinger, Inc. v. BMG Music Pub.*,
9  512 F.3d 522, 533 (9th Cir. 2008) ("The Declaratory Judgment Act gives the Court the authority
10  to declare the rights and legal relations of interested parties, but not a duty to do so.").

11  In evaluating whether to hear a declaratory judgment action, a district court must
12  first determine "whether there is an actual case or controversy within its jurisdiction." *Am. States*
13  *Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).  Defendants concede and the court finds
14  there is an actual case or controversy based on the parties' dispute over whether plaintiff breached
15  its duty to Silva and McDonald.  ECF Nos. 8-1 at 4 & 9-2 at 4.

16  The court must then decide "whether to exercise its discretion by analyzing the
17  factors set out in *Brillhart* . . . ." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir.
18  2005).  In *Brillhart*, Excess, an insurer, sought a declaratory judgment to determine its rights
19  under a reinsurance agreement made with Central Mutual Insurance Company, which had issued
20  an automobile policy to Cooper-Jarrett, Inc.  316 U.S. at 492.  Petitioner's decedent was killed in
21  an accident caused by the driver of a truck leased by Cooper-Jarrett, but Central Mutual refused to
22  defend the suit against its insured.  *Id*.  During the pendency of petitioner's suit, Central Mutual
23  became insolvent and Cooper-Jarrett defaulted.  Petitioner obtained a default judgment against
24  Cooper-Jarrett and then instituted garnishment proceedings, adding Excess as a party.  *Id*. at 492-
25  93.  Before it was added to the garnishment action, Excess filed the declaratory judgment case;
26  petitioner moved to dismiss.  *Id*. at 493.

27  The Supreme Court said that the district court "was under no compulsion to
28  exercise" its jurisdiction and ordinarily "it would be uneconomical as well as vexatious for a

8

federal court to proceed in a declaratory judgment suit when another suit is pending in a state court presenting the same issues, not governed by federal law, between the parties." *Id*. at 495. It continued:

> Where a district court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in state court. This may entail inquiry into the scope of the pending state proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether the necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id*. at 495.

In *Wilton*, the Supreme Court reaffirmed a district court's discretion "whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites" and observed that *Brillhart* supported the district court's decision to stay an insurer's declaratory judgment action filed before a related state court proceeding. 515 U.S. 277, 282, 283 (1995).

Courts in the Ninth Circuit have distilled three main inquiries from *Brillhart*, inquiries that remain the "philosophic touchstone" for the court's decision: the court "should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means for forum shopping; and it should avoid duplicative litigation." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc). In addition, a court may consider "'whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.'" *Id*. at 1225 n.5 (quoting *Kearns*, 15 F.3d at 145).

Before addressing the *Brillhart* factors, the court considers plaintiff's contention that this court has exclusive jurisdiction over the action because it was filed before the state action. ECF Nos. 20 & 21 at 9. Plaintiff relies on a footnote in *Wilson v. Schnettler*, which says

9

that "[w]hen a state court and a court of the United States may each take jurisdiction of a matter, the tribunal where jurisdiction first attaches holds it, to the exclusion of the other . . . ." 365 U.S. 381, 385 n.3 (1961). *Wilson* did not involve a declaratory judgment action, but rather was a case where a party, charged criminally in state court, asked the federal court to enjoin the use of evidence in his state trial. As the Northern District has observed, this ruling was a precursor to *Younger v. Harris*, 401 U.S. 37 (1971), which addresses federal court interference in ongoing state criminal proceedings, and does not have general application to a consideration of actions pending in both state and federal courts. *See Great Lakes Dredge & Dock v. Campbell*, NO. C07-01694 MJJ, 2007 WL 3023126, at *3 (N.D. Cal. 2007). At argument, plaintiff conceded that *Wilson* does not control the resolution of this motion.

       1. Needless Determination of State Law Issues

    Lexington invokes this court's diversity jurisdiction, as it is a citizen of Delaware and defendants are citizens of California, and it raises only state law issues in seeking the declaration that it owes no contractual duty to pay any more than its policy limits to indemnify Silva and McDonold and did not breach its duty of good faith and fair dealing when evaluating settlement of the Underlying Action. *See generally* ECF No. 1. Moreover, the state law involved — regulation of relations between insurance companies and insureds — is one left exclusively to the states, although this consideration does not compel abstention. *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991), *overruled in part on other grounds by Dizol*, 133 F.3d 1220.

    Even though there is no absolute requirement that a court dismiss insurance cases, "when a state action is pending presenting the same issue of state law as is presented in a federal declaratory suit, 'there exists a presumption that the entire suit should be heard in the state court.'" *Robsac*, 947 F.3d at 1370 (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366-67 (9th Cir. 1991)). In fact, "needless determination of state law issues alone may support" abstention or dismissal. *R.R. Street & Co, Inc. v. Transport Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011).

/////

10

1          At hearing, plaintiff argued that no such presumption arises in this case because
2   there was no state action pending at the time it filed suit.  Defendants countered that the Ninth
3   Circuit has found the presumption to attach when the state action was "pending" at the time the
4   court considered whether to exercise its judgment, not whether it was pending when the
5   declaratory judgment action was filed.  Ninth Circuit law supports both arguments:  in *Dizol*, the
6   court said "[i]f there are parallel state proceedings involving the same issues and parties pending
7   at the time the federal declaratory action is filed, there is a presumption that the entire suit should
8   be held in state court."  133 F.3d at 1225.  In *Chamberlain*, the Ninth Circuit observed that the
9   presumption arises when a suit is pending in state court; in that case, the state case was the later-
10  filed action.  931 F.3d at 1366-67.  Whether or not the timing of the actions gives rise to a
11  presumption ultimately does not control here:  this court must consider whether the pendency of
12  the state action would render this court's decision an unnecessary decision on state law issues.
13  *See Am. Cas. Co. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999) (stating that court should
14  evaluate this factor "under the circumstances existing at the time the issue was raised rather than
15  at the time of filing").

16          Plaintiff argues this comity factor does not support dismissal because its suit will
17  not require the interpretation of any unique or specialized state law.  ECF Nos. 20 & 21 at 13.  It
18  cites to *Brillhart*, arguing the Supreme Court limited the rule to "technical and specialized
19  subjects."  *Id.; see Brillhart*, 316 U.S. at 497.  It is true the *Brillhart* court said it was "not our
20  function to find our way through a maze of local statutes and decisions on so technical and
21  specialized a subject as the scope of a garnishment proceeding."  *Id*.  However, in *Wilton*, the
22  Supreme Court upheld the district court's decision to stay a declaratory judgment act in which an
23  insurer sought a declaration that its policies did not cover a state court judgment against an
24  insured.  515 U.S. at 279-80.  And in *Robsac*, the Ninth Circuit observed that the district court
25  could have avoided a needless determination of questions of insurance coverage by declining
26  jurisdiction.  947 F.2d at 1371.  Accordingly, even non-technical and general state law issues may
27  call for dismissal or abstention.  Here, the pending state case will address the issues raised by this
28  /////

action, suggesting this action will involve the needless determination of state law issues. Whether or not there is a presumption, this factor favors dismissal.

### 2. Forum Shopping

The Ninth Circuit has said that *Brillhart's* forum shopping factor relates to "the 'defensive' or 'reactive' nature of a federal declaratory judgment suit," and such a suit "would justify a court's decision not to exercise jurisdiction." *Robsac*, 947 F.2d at 1371 (citation and internal quotation marks omitted).

Defendants argue it is clear plaintiff's action is a reactive one, as it was filed the day before the date the lawyer for Silva and McDonald requested Lexington respond to his request for indemnification of the full amount of the judgment in the Underlying Action. ECF No. 23 at 9; *see* ECF No. 21-1 at 17-19. Plaintiff counters it did not engage in forum shopping but rather acted only when it was clear the negotiations over the demands of Silva and McDonald for coverage had broken down. ECF No. 21. It also argues that defendants have acted improperly by filing suit when they knew the declaratory judgment action was pending.

Nothing in the record before the court supports a finding that either party's suit was improperly reactive or defensive: "Federal declaratory judgment suits are routinely filed in anticipation of other litigation. . . . Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003); *see also Dizol*, 133 F.3d at 1225 ("We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage.") (citation and internal quotation marks omitted); *but see Budget Rent-A-Car v. Crawford*, 108 F.3d 1075, 1081 (9th Cir. 1997), *overruled in part on other grounds by Dizol*, 133 F.3d 1220 (stating that concerns about forum shopping "are also present when a federal plaintiff seeks declaratory relief in anticipation that a related state court proceeding may be filed").

Moreover, "[t]iming is only one consideration when deciding whether to entertain a declaratory judgment action, and the *Wilton/Brillhart* factors sometimes compel a court to

decline to entertain an earlier-filed action in favor of a later-filed action." *R.R. Street*, 656 F.3d at 976. The fact that defendants' state action was filed later similarly does not, without more, show the suit was defensive or reactive.

The record here does not completely support Lexington's claim that it filed suit only after attempts at mediation: the exchange of letters are akin to the opening salvos of battle. Moreover, Gorham's letter of December 16 questions Cholakian's actions on behalf of CCIC, suggesting that Silva and McDonold would include this non-diverse party in any litigation. ECF No. 21-1 at 14-15. Nevertheless, nothing in the record demonstrates Lexington has gained substantial tactical advantage by filing the instant action.

This factor is neutral.

3. Avoiding Duplicative Litigation

A court may dismiss or abstain from a declaratory action when "[a]ll of the issues presented by the declaratory judgment action could be resolved by the state court." *Robsac*, 947 F.2d at 1372. The federal and state cases do not have to be completely parallel: "an exact or precise identity of the issues between the federal and state action is not required to support dismissal of a declaratory action." *Navigators Specialty Ins. Co. v. CHSI of Cal.*, No. 3:12–cv–1611–GPC–JMA, 2013 WL 435944, at *5 (S.D. Cal. Feb. 4, 2013); *see also Emps. Reins. Corp. v. Karussos*, 65 F.3d 796, 800 (9th Cir. 1995), *overruled in part on other grounds by Dizol*, 133 F.3d 1220.

In the instant action, Lexington seeks a declaration that it did not breach its contractual duties and its duty of good faith in responding to the settlement overtures in the Underlying Action. ECF No. 1. In the state court, Silva and McDonold seek damages against CCIC and Lexington for breach of contract and for the implied covenant of good faith and against various lawyers for professional negligence, all stemming from the state defendants' alleged acts and omissions concerning settlement with the Hacketts.

Lexington argues the differences between the two actions show that the suits are not duplicative and also show the dispute can better be resolved in this action. It says that because the Hacketts are interested parties to this dispute but are not parties to the state action, the

1  limits dispute may only be resolved completely in this action. ECF No. 21 at 11. However, even
2  if the some of the parties to the federal action are not parties to the state action and the issues are
3  not identical, "neither of these circumstances warrants the exercise of federal jurisdiction. It is
4  enough that the state proceedings arise from the same factual circumstances." *Golden Eagle Ins.*
5  *Co. v. Travelers Co.*, 103 F.3d 750, 754-55 (9th Cir. 1996), *overruled in part on other ground by*
6  *Dizol*, 133 F. 3d 1220. Moreover, "in determining whether to exercise its jurisdiction to reach the
7  merits in an action for declaratory relief, the dispositive question is not whether the pending state
8  proceeding is 'parallel,' but rather, whether there was a procedural vehicle available to the
9  insurance company in state court to resolve the issues raised in the action in federal court."
10 *Polido v. State Farm Mut. Auto. Ins. Co.*, 110 F.3d 1418, 1423 (9th Cir. 1997), *overruled in part*
11 *on other grounds in Dizol*, 133 F.3d 1220. Lexington has not suggested it will be unable to
12 proceed against the Hacketts in state court, if they are indeed proper parties, a question this court
13 does not address.

14 It is true that the case might be more speedily resolved if it were to remain only a
15 declaratory judgment action, FED. R. CIV. P. 57, an important consideration as interest on the
16 $39 million judgment increases. But this court's supervisory powers notwithstanding, there is no
17 guarantee the action will remain so narrow, as Silva and McDonald may well assert
18 counterclaims against Lexington and seek to join the lawyers as parties to those counterclaims.
19 *See* ECF No. 21-1 at 38. Any increased efficiency in litigating the case in this court is likely
20 illusory.

21 This final factor favors dismissal.

22 On balance, dismissal is appropriate to avoid needless resolution of state law
23 issues and duplicative litigation. Because the court is dismissing this case, CCIC's motion to
24 intervene is moot.
25 /////
26 /////
27 /////
28 /////

IT IS THEREFORE ORDERED that:

1. The motions to dismiss, ECF Nos. 8 & 9, are granted;
2. The motion to intervene, ECF No. 11, is denied as moot; and
3. This case is closed.

DATED: May 6, 2014.

_____
UNITED STATES DISTRICT JUDGE